# Carnes *v.* Farmers' Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Sole and unconditional ownership—Mistake of agent.*

Where the title to property insured is in a man and his wife, and the agent of the insurance company, with full knowledge of the fact, in writing the policy, omits by mistake the name of one of the parties, and it appears that the insured made no misrepresentations as to the title, the policy is not avoided by reason of the fact that the person named was not the sole and unconditional owner of the premises.

*Insurance—Fire insurance—Beneficiary—Proof of loss.*

Where mortgagees take out a policy of fire insurance to protect their interests, but the policy names the owner as the insured and makes the mortgagees the payees of the policy " as their interest may appear," and it also appears that the policy provided that an interest in it should exist in favor of a mortgagee as affected by conditions attached or appended to the policy, and it also appears that the mortgagees did not act as agents for the owner, who had nothing to do with the taking out of the policy, and by her conduct repudiated it, the mortgagees are entitled to the proceeds of the policy in case of loss. In such case the mortgagees are not in default for failure to present proofs of loss where it appears that the adjuster of the company knew of the loss, inspected the premises and told the mortgagees that the owner was the proper person to make out proofs of loss.

Argued April 21, 1902. Appeal, No. 98, April T., 1902, by defendant, from judgment of C. P. Westmoreland Co., Aug. T., 1900, No. 53, on verdict for plaintiff in case of Lydia Carnes and J. W. G. Carnes v. Farmers' Fire Insurance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit on a policy of fire insurance.   Before McCON-NELL, J.

At the trial the defendant company claimed that there was a misstatement as to the ownership of the property, and that no proofs of loss were ever furnished.   The facts relative to both of these defenses are stated in the opinion of the Superior Court.

The trial court charged in part as follows :

[There is where one point of conflict is between the defendant company and the plaintiff in this case.   It is denied by the plaintiff that he made any representation whatever with respect to the title of this property, or that he was required to make any representations with respect to the title to this property.   The agent says that he was given to understand—that he understood from Mr. Carnes that the title was in Mrs. Armstrong.   I don't know that he is very specific about the things that led him to so understand Mr. Carnes.   I don't recall that he just said what words were used by Mr. Carnes.   He said several times that he understood from him that the title was in Mrs. Armstrong.   But the plaintiff's contention is that he made no statement with respect thereto, but that on the contrary, the agent himself acted on his own knowledge and without any inquiry from him with respect to the title ; that in fact this same agent had taken out a policy on the same building at some former time and in some other company, and perhaps that Mrs. Mary L. Armstrong was named the owner of the property in that.

There is a line of cases which hold that where there has been any deceit practiced upon the company, that the effect of that is to avoid the policy, and the contract here substantially means that same thing.   But, on the other hand, it is just as clearly held that the fraud or mistake of an insurance agent, within the scope of this authority, will not enable his principal to avoid the policy of insurance to the injury of the insured who acted in good faith ; " and the fraud or mistake of the agent may be proved by parol evidence notwithstanding it is provided in the policy that the description of the property shall be part of the contract and warranty by the insured."   It would be monstrous if a provision of that kind could be put in a

policy, and then, for the very purpose of avoiding liability on the policy, an agent, of his own accord, could put down an untrue statement. If the insured is called upon to answer he must answer according to the fact. There don't seem to have been any written statement required by this company. In a a great many companies a written application is required and certain things are required to be put in writing by the insured before the application is received. There don't seem to be anything of that kind required here. But notwithstanding the fact that there is no written application provided for, if the company has the right to rely upon the statement of the insured, in case of its being untrue with respect to the ownership of the property, the insured cannot recover. But he was not required in this case, according to the testimony, to make any written statement. He denies that he made any oral statement with respect to that matter. The agent, however, says that he understood from him that Mrs. Armstrong was the owner of this property. Now there we have a conflict of testimony that you will have to settle. If on the one hand, the agent acted on his own knowledge and made a mistake about the fact, no matter what provision they put in the policy here, that would not be ground for avoiding the policy. It cannot be that the mistake or the fraud of an agent would work to the injury of the insured if he has acted in good faith and done all that is required of him, and there is no specific agreement calling upon him to make a statement and no actual calling made upon him by the agent who sells the insurance to make a statement. If the agent acts upon his own knowledge, and not upon any representations made by the insured to induce the insurance, then he has the right to recover. But if, on the other hand, he is called upon for a statement in regard to the matter, and he gives a wrong impression, gives forth a statement that is not true in point of fact, or even if he recklessly made it without knowing what the fact was, then he must take the consequences. So that is all we want to know upon that branch of the case. We have numerous cases of the same import as the one from which I read you a moment ago. In one case that I now have before me there was a written statement required, and in that statement the following appeared :

" Chimneys are constructed from the ground. The title is

in the name of the insured, in fee simple, and the building has never been on fire, nor has the applicant suffered loss by fire."

That was the statement that was made, and by the terms of the policy that became a part of the policy. Now, in fact, the chimney was built from the loft, the title to the premises was in the name of the applicant's wife, and the building had been on fire and the plaintiff burned out once before. All those statements were utterly and absolutely false. Now they were signed, however, by the applicant, and yet the policy in that case was not void, because it was proved to the satisfaction of the court and jury that truthful answers were made to these statements, and that the agent himself wrote down, either through mistake or wilfulness, these wrong answers, these untrue statements; that in fact they were not the statements of the insured at all, and that it was not his act that misled the company, and that the company could not shield themselves behind the blunders or worse of their agent. The syllabus of the case reads:

"The fraud, mistake, knavishness or blunder of an agent done within the scope and powers given him by the insurance company, will not have the effect to allow avoiding the policy to the injury of the insured who innocently became a party to the fraud. Where the agent of the insurer has cheated the insured into signing the warrant and paying the premium, and the policy was issued upon the false statements of the agent himself, the insured may prove the fact and hold the principal to the contract as if he had committed the wrong."

So that you see that question is quite a material one to know where the statement in regard to this matter comes from. If the insured, or in this case the person who had the policy taken out, made a false representation, and the company issued a policy on that statement, he cannot recover by reason of the title not being as it is represented in his policy. But if, on the other hand, he did nothing to deceive the company into putting themselves into the position of insurer of this property, and the agent acted mistakenly on his own knowledge, that mistake of his ought not to injure the person who in good faith has taken out the policy.] [4]

[The question that we have to look at now is what transpired between the adjuster and Mr. Carnes on this occasion. Was it in effect told him that he could not make out these proofs, but

that Mrs. Armstrong, and Mrs. Armstrong alone, could? Is that the true state of facts? Is it apparent from the testimony on that point that the adjuster would not receive these proofs and these statements from Carnes because he was not the assured under this policy? That is one of the things that you will have to consider.] [5]

[If the plaintiff Carnes was precluded from compliance with these provisions by the act of the company, or by the agents of the company within the scope of their employment, then they have waived the provisions contained here, and they don't need to have the information that is stipulated for in this provision.

Whether or not that is the state of the facts you will have to determine from the evidence. Whether there is such evidence as indicates that the furnishing of these statements was substantially dispensed with by the act of the company itself, through its authorized agents, you will have to determine from the evidence. If you find that it was dispensed with by them, then it cannot be a matter of defense here upon the trial. They cannot set up their own act here as a matter of defense after a loss has occurred.] [6]

[We think the whole of the evidence shows that it was intended for their benefit, and that this mode of using the name of Mary L. Armstrong was a formal matter that was adopted to conform to the requirements of the company. There is no dispute but that this policy was intended for the benefit of the Carnes. [7]

Verdict and judgment for plaintiff for $1,145.83. Defendant appealed.

*Errors assigned* among others were (4–7) above instructions quoting them.

*C. E. Whitten*, with him *J. R. Smith* and *B. F. Scanlon*, for appellant.—In the policy sued upon, Mary L. Armstrong is the assured. It is not disputed that the title to the premises is in Mary L. Armstrong and John Armstrong, her husband. This, in the absence of fraud, accident or mistake, as to the insertion of the name of Mary L. Armstrong as owner, was a flat bar to plaintiff's recovery: Schroedel v. Humboldt Fire Insurance Co., 158 Pa. 459; English's App., 119 Pa. 533; Rothchild Co.

v. McLaughlin, 6 Pa. Superior Ct. 347 ; Phillips v. Meily, 106 Pa. 536.

Carnes was merely the agent of the owner and he cannot recover, except as the appointee of the owner to receive the proceeds which would ordinarily be payable to the owner: State Mutual Fire Ins. Co. v. Roberts, 31 Pa. 438.

Under the testimony we contend that there was no evidence to show that the defendant waived the furnishing the sworn statements required by the policy. The adjuster did not offer to pay anything. Clearly there was no adjustment made. Even if the adjuster had made an offer which was not accepted, that would not constitute a waiver of proofs : Freedman v. Providence Washington Insurance Co., 175 Pa. 350.

*J. S. Beacom*, of *Beacom & Newill*, for appellee.—The property insured was a single building. The loss was total. The company had full and prompt notice. Pursuant to such notice the adjuster of the company went to the scene of the fire, viewed the ruins, and in company with the plaintiff made measurements and estimates of the value of the building. It has been decided over and over again that under such circumstances technical proofs could but restate that of which the company was already informed, and were therefore not necessary: Roe v. Dwelling House Insurance Co., 149 Pa. 94 ; McGonigle v. Aurora Fire Insurance Co., 168 Pa. 1 ; Hower v. Susquehanna Mut. Fire Insurance Co., 9 Pa. Superior Ct. 153.

If the agent himself by the form of his communication incorrectly stated the ownership of the property, the company cannot claim immunity from liability because of the falsehood or blunder of its agent. It is not a question of reforming a a written instrument for the correction of a mutual mistake that is involved in such a case : Kister v. Lebanon Mut. Ins. Co., 128 Pa. 564; Allemania Ins. Co. v. McClure, 25 Pitts. L. J. 70 ; Farmers', etc., Mut. Insurance Co. v. Meckes, 10 W. N. C. 306 ; Smith v. Peoples' Mut. Live Stock Ins. Co., 173 Pa. 15 ; Mullen v. Union Cent. Life Ins. Co., 182 Pa. 150 ; Susquehanna Mut. Ins. Co. v. Cusick, 109 Pa. 158 ; Meyers v. Lebanon Mut. Ins. Co., 156 Pa. 420 ; Dowling v. Merchants' Ins. Co., 168 Pa. 234; Eilenberger v. Protective Mut. Fire Ins. Co., 89 Pa. 464.

OPINION BY WILLIAM W. PORTER, J., July 10, 1902:

The plaintiffs in this case are mother and son. They were holders of mortgages on certain premises occupied as a store and dwelling by the son. He applied to the agent of the defendant company for a policy of fire insurance to protect his own and his mother's interests as mortgagees. He paid the premium. With the intention and purpose well understood by both him and the agent, a policy was written naming one, Mary L. Armstrong, as the insured, with the added clause, "loss, if any, first payable to Mrs. Lydia Carnes and her son, J. W. G. Carnes, as their interest may appear." The person named as the insured had no participation whatever in the transaction. A fire totally destroyed the premises insured. The plaintiffs notified the agent of the company. An adjuster appeared who examined the premises in company with J. W. G. Carnes; made measurements with a view to figuring the cost of reconstruction; made suggestion of settlement and demanded inspection of the policy. The adjuster then notified Mr. Carnes that Mary L. Armstrong, named as the insured, was the proper person to make out proofs of loss, and that Carnes was not the proper party with whom to make an adjustment. The adjuster, himself, had an interview with Mrs. Armstrong, as did also J. W. G. Carnes. Mrs. Armstrong, having no interest whatever in the subject-matter, did not act in the premises. The plaintiff, Carnes, called upon the agent, who wrote the insurance for the company, more than once in regard to settlement, and was told by him that upon a release from Mrs. Armstrong being obtained, the company would pay. So the matter stood until suit brought. To avoid liability on the contract, the defendant company sets up defenses based upon some of the clauses contained in the policy. It is argued that it was shown that Mrs. Armstrong, named as the insured, was not the "sole and unconditional" owner of the premises insured, and that the title was in her and her husband jointly, and that thereby the policy became void. The result of the testimony of J. W. G. Carnes and of Lang, the agent of the company, is that the agent had precedently written an insurance on the property and had information in respect to the title. Carnes says, in chief, that he did not furnish information as to ownership, but on cross-examination, admits that he may have referred to it. He made

no formal written application for the insurance. The agent admits that before the interview with Carnes, he understood that " the Armstrongs " were the owners of the property, and that he " understood from Mr. Carnes that they still owned it." If the title was in both Armstrong and his wife, and the name of one was omitted from the policy, this omission was a blunder for which the applicant for the insurance was not responsible, since the agent of the company had information in his own possession upon which (as found by the jury) he assumed to act in writing out the policy: Kister v. Lebanon Mutual Ins. Co., 128 Pa. 553; Susquehanna, Mut. Ins. Co. v. Cusick, 109 Pa. 157; Meyers v. Lebanon Mut. Ins. Co., 156 Pa. 420; Dowling v. Merchants' Ins. Co., 168 Pa. 234.

It remains, under the seventh assignment, to consider whether under the form of the policy and the testimony, the plaintiffs can sustain their action. The policy names Mary L. Armstrong as the insured. It makes the plaintiffs the payees of the policy " as their interest may appear." The two Carnes are not named as mortgagees, but the testimony is conclusive that the purpose of the insurance was the protection of their interest as mortgagees. The appellant asserts that the Carnes are not the insured, but only the payees, to whom the money shall pass after adjustment with the party named as the insured, and that, therefore, the plaintiffs have no right to hold the defendant company upon the policy. The phraseology of the policy makes the payees the persons primarily protected. True, the contract of insurance does not say that the company " insures " the payees, but it explicitly agrees to pay the payees in case of loss, to the extent to which they may be able to prove interest.

The policy contains another clause which fortifies the view that the insurance in this case protects the payees, and shows that the covering of interests other than those of the " insured " were within the contemplation of the insurer. The clause provides: " If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein," the conditions of the policy shall apply as they are written, or as they may be affected by conditions attached or

appended to the policy. In this case there were no attached or appended conditions or provisions. The "payable to" clause opened the insurance to include the interests of the payees by the consent of the insurer. The terms of the contract of insurance as written, bear the construction, then, that the plaintiffs, although named only in the "payable to" clause, are entitled to sue on the contract of insurance to the extent of their interests, in view of the uncontradicted proof that the plaintiffs did not act as agents for the "insured;" that the party designated as the insured, had no connection with the writing of the insurance, paid no consideration for protection under its terms, has made no demand for payment of the policy, and has by conduct, repudiated any connection with the contract. Further elaboration of this point is unnecessary in view of the discussion and citations contained in the opinion of Judge WILLARD, in Zehring's Estate, 4 Pa. Superior Ct. 243.

A further matter of defense set up is that the plaintiffs failed to furnish proofs of loss. The adjuster inspected the ruins. He verified the fact that the loss was of a single building and that it was total. He made measurements to determine the cost of reconstruction, and inquired as to the age and past uses of the building. He was in conference at the ruins with Carnes, who was in possession and to whom the policy was issued by the company. He had opportunity to obtain any desired information. He told Carnes that Mrs. Armstrong was the proper party to make out the proofs of loss under the terms of the policy; and, as he says, gave Carnes " to understand he was not the party to adjust with me on that occasion," and that " the insured was not there." Under these circumstances, Carnes was not in default for failure to present proofs of loss, which he was advised would not be accepted from him. From the facts shown, a waiver of proofs might be inferred: Pennsylvania Fire Insurance Co. v. Dougherty, 102 Pa. 568; Roe v. Dwelling House Ins. Co., 149 Pa. 94; McGonigle v. Susquehanna Mut. Fire Ins. Co., 168 Pa. 1.

The last proposition advanced by the appellant is that the court erred in permitting testimony to be introduced to the effect that the plaintiffs' only knowledge of an intended defense was the assertion, by the agent of the defendant, that a release by Mrs. Armstrong was not furnished. The trial judge

incidentally referred to the matter in the charge, but his remarks were explanatory and not injurious to the defendant. In the trial and in the submission to the jury, no proffered matter of defense was eliminated. We are unable to discover any error committed by the court in the conduct of the trial inducing a reversal of the judgment in this case. The matters of defense presented were purely technical. The record before us exhibits a case without vestige of meritorious defense.

Judgment affirmed.