JOSHUA C. TUCKER *vs.* JOSEPH DENICO *et ux.*

WASHINGTON—MAY 29, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)  *Common Law of State.    Statute of Frauds and Perjuries.    Execution and Attachment of Equitable Interests.*

The statute of 29 Car. II, cap. 3, § 10, commonly called the statute of frauds and perjuries, introduced into the colony, by act of the General Assembly, February, 1749, is still a part of the common law of the State, so as to render equitable as well as legal estates liable to levy upon execution. *Kendall* v. *Gibbs,* 5 R. I. 525, overruled.

Gen. Laws cap. 253, § 10, of attachments, is broad enough to include equitable as well as legal interests, thereby extending the common law of the State by making that attachable on original writ which was already subject to levy upon execution.

(2)  *Fraud.    Bankruptcy.    Equity.*

The effect of a deed taken by a debtor in the name of a third party, to prevent his creditors from subjecting the property to the payment of their claims, is to raise a resulting trust therein to him for the benefit of those of his creditors who shall take the necessary steps to enforce their claims by prosecuting them to final judgment and execution at law, and afterwards by proceeding to establish the trust in equity. Where only one creditor takes such steps the trust can be established only for him, and hence the property so affected can not pass to the trustee in bankruptcy, since it could not be distributed among the general creditors, but must be applied for the benefit of the execution creditor.

BILL IN EQUITY.  Heard on re-argument after decision reported in 26 R. I. 560.  Demurrer to bill overruled.

DUBOIS, J.  In the re-argument of this case the plaintiff

submits that under the common law of this State derived from the Statute of 29 Car. II. cap. 3, § 10, the levy of his execution against the respondent Joseph Denico upon all the right, title, and interest which the said respondent had on the 2nd day of December, 1897, at 11 o'clock and 45 minutes, A. M., the time of the attachment on original writ, in and to the real estate described in the bill of complaint, covered equitable as well as legal rights. Said section 10 reads as follows:

"X. And be it further enacted by the Authority aforesaid, That, from and after the said Four and twentieth Day of *June,*" (1677) "it shall and may be lawful for every Sheriff or other Officer to whom any Writ or Precept is or shall be directed, at the Suit of any Person or Persons, of, for and upon any Judgement, Statute or Recognizance hereafter to be made or had, to do, make and deliver Execution unto the Party in that Behalf, suing, of all such Lands, Tenements, Rectories, Tithes, Rents and Hereditaments, as any other Person or Persons be in any manner of wise seised or possessed, or hereafter shall be seised or possessed, in Trust for him against whom Execution is so sued, like as the Sheriff or other Officer might or ought to have done, if the said Party against whom Execution hereafter shall be so sued, had been seised of such Lands, Tenements, Rectories, Tithes, Rents or other Hereditaments of such Estate as they be seised of in Trust for him at the Time of the said Execution sued; which Lands, Tenements, Rectories, Tithes, Rents, and other Hereditaments, by force and virtue of such Execution, shall accordingly be held and enjoyed freed and discharged from all Incumbrances of such Person or Persons as shall be so seised or possessed in Trust for the Person against whom such Execution shall be sued; and if any *Cestuy que Trust* hereafter shall die, leaving a Trust in Fee-simple to descend to his Heir, there and in every such Case such Trust shall be deemed and taken, and is hereby declared to be, Assets by Descent, and the Heir shall be liable to and chargeable with the Obligation of his Ancestors for and by reason of such Assets, as fully and amply as he might or ought to have been, if the Estate in Law had descended to him in Possession in like Man-

ner as the Trust descended; any Law, Custom or Usage to the contrary in any wise notwithstanding."

At its session on the last Tuesday of February, 1749, the General Assembly of the Colony of Rhode Island and Providence Plantations in New England received the report of the committee appointed to prepare a bill for introducing into the colony such of the statutes of England as were agreeable to the constitution. The report included: "The Statute of the Twenty-ninth of *Charles* the Second, chap. 3d., commonly called the Statute of Frauds and Perjuries," and the following action was thereupon taken: "And this Assembly having taken the said Report into Consideration, *Do Vote and Resolve,* That all and every of the Statutes aforesaid, be, and they are hereby introduced into this Colony, and shall be in full Force therein, until the General Assembly shall order otherwise."

The Digest of 1767 included "An Act, regulating sundry Proceedings in the several Courts in this Colony," wherein it was enacted: "That all the Courts in this Colony shall be held to, and governed by, the Statutes, Laws, and Ordinances (1) of this Colony, and such Statutes of Parliament as are hereinafter mentioned," that is to say (among others): "The Statute of the Twenty-ninth of *Charles* the Second, Chap. 3d. commonly called the Statute of Frauds and Perjuries." In addition there was this further provision enacted: "That in all Actions, Causes, Matters and Things, whatsoever, where there is no particular Law of this Colony, or Act of Parliament introduced, for the Decision and Determination of the same, then and in such Cases the Laws of *England* shall be in Force for the Decision and Determination of the same."

The Digest of 1798 contains "An Act to prevent Frauds and Perjuries," in two sections whereof the first is a substantial re-enactment of 29 Car. II. cap. 3, § 4, and the second is a like re-enactment. of 13 Elizabeth, cap. 5, §§ 1 and 2, thus combining portions of both the statute of frauds, A. D. 1677, and the statute of fraudulent conveyances, A. D. 1570. Doubtless by such combination the able compilers of the digest intended to provide a brief, yet practicable, statute to prevent the frauds therein alluded to and the perjury likely to attend upon the

same. But they were also careful, as appears in the act of revision, not to repeal the statute laws of England covering cases in which provision had not been made either at common law or by the statutes contained in the digest itself.

The respondents claim that this re-enactment of section 4 of the statute of frauds and perjuries, effects a repeal of the other, and omitted, sections of the act.

The repealing section in the Act of Revision in the Digest of 1798 is as follows: "Sec. 4. . . . That the said laws contained in said digest shall be in force and take effect from the expiration of thirty days after the date of said proclamation, and not before; and the acts and laws contained in the said digest, from the said time, shall, and hereby are declared to be, the public statute laws of this State, and that all other public statute laws, heretofore made and published, which are not contained in the said digest, shall be and hereby are declared to be repealed, from the expiration of said thirty days from the date of said proclamation to be issued as aforesaid: *Provided always,* that such of the statutes contained in said digest, which remain for substance the same as before the said revisal, shall be considered as having continued in force from the time of their being first enacted, or as if this revision had not been made. . . . And whereas in the aforesaid digest, statute provision may not have been made in all cases, unprovided for at common law:

"Sec. 5. Be *it therefore enacted,* That in all cases in which provision is not made, either at common law, or by the statutes aforesaid, the statute laws of England, which have heretofore been introduced into practice in this State, shall continue to be in force, until the General Assembly shall especially provide therefor."

The Statute of 29 Car. II. cap. 3, § 10, never was one of the "public statute laws, heretofore made and published," and therefore was not repealed by the clause repealing "public statute laws, . . which are not contained in the said digest."

By Statute 29 Car. II. cap. 3, § 10, special provision was made for levying executions upon equitable estates. There

was no provision for such levy at common law, neither was provision made for like levies by statute in the digest of 1798. As the Statute 29 Car. II. cap. 3, § 10, had been theretofore introduced into practice, it was not repealed by that digest and has been kept alive by similar provisions through the successive revisions of our statutes—Digest, 1822, First cap. § 5; Digest of 1844, First cap. § 6; Revised Stats. cap. 245, § 3; Gen. Stats. cap. 260, § 3; Pub. Stats. cap. 259, § 3; and Gen. Laws, cap. 297, § 3.

Although we have made careful examination for public laws passed by the General Assembly since the session of 1749, when the Statute of 29 Car. II. cap. 3d, entitled: "An act for prevention of frauds and perjuries" but "commonly called the Statute of Frauds and Perjuries," with the other English statutes, were introduced into the colony and declared by the General Assembly to be in full force therein "until the General Assembly shall order otherwise," we have been unable to discover any act by which the legislature repealed section 10 of that statute. Without doubt portions of the statute have been superseded if not repealed by re-enactment and otherwise. But as late as 1889, in *Taft* v. *Dimond*, 16 R. I. p. 586, Durfee, C. J., found section 7 of the statute to be still in force, as follows: "The complainants claim on the ground of an express trust, any trust by implication being inconsistent with the covenant of warranty in the deed. Their claim is within the seventh section of the statute of 29 Car. 2, cap. 3, known as the statute of frauds and perjuries, that section, though never expressly re-enacted here, being recognized as a part of the law of the State. The statute of frauds and perjuries is one of the statutes which were declared to be in force in this State by the act of 1749. The seventh section enacts that 'all declarations or creations of trust or confidences of any lands, tenements, or hereditaments shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect.' The question here, then, is whether the complainants, as heirs at law of Sarah A.

Brayton, show in respect of the estate a trust in their favor, manifested and proved by some writing signed by Dimond."

Section 7 had sufficient vitality to survive the revolution, the adoption of the constitution and the successive revisions of the statutes, without containing anything exceptional or peculiar to distinguish it, in such vitality, from section 10. There is nothing in the history of the thirty-one years from 1767 to 1798 that warrants the assumption that the General Assembly even attempted to relieve equitable estates from levy on execution. Neither can it be said that such a right or remedy was foreign to the genius of our institutions or unsuited to our condition at that time. The "lively experiment" being held forth "that a flourishing civil state may stand and be best maintained with full liberty in religious concernments," did not include freedom from earthly obligations or offer an asylum to delinquent debtors in the State itself. To treat section 7 as a subsisting part of the common law of this State and at the same time to reject section 10 would be illogical. We therefore prefer to maintain the integrity of both of said sections.

It is argued that this position is opposed to that taken by Bosworth, J., in *Kendall & Co.* v. *Gibbs & Co.*, 5 R. I. at p. 529, as follows: "The legal estate in the premises was vested in Walter Channing, his heirs and assigns, by the terms of this will; and the defendants' interest, if any they have, is an equitable interest only.

"At common law, only the legal title to property is liable to attachment and seizure on execution. Property held in trust is not liable to be taken for the debts of the *cestui que trust.* This doctrine has never been questioned in so far as it relates to express trusts, however otherwise some courts may have held in regard to trusts arising by implication. The English statutes have superseded the common law in this respect, and so have the statutes of many of the states in this country. In our state, no statute exists which extends to such cases, and the common law alone must be our guide." The learned judge was right as far as he went, but the fact that Rhode Island had a common law of its own seems to have escaped his attention, as well as that of the eminent counsel in the case. At the date

of that opinion, September term, 1858, the Statute 29 Car. II. cap. 3, § 10, was a part of the common law of this State (Revised Stats. cap. 245, § 3), and that common law was evidently not in the mind of the court at the time of the rendition of the opinion, as, of course, the common law referred to by him was the common law of England.

The elaborate and exhaustive briefs of the respondent shed but little light upon this question, which involves the construction of Rhode Island statutes affecting its common law.

Under Gen. Laws R. I. cap. 253, § 10: "The officer commanded by any original writ or writ of mesne process to attach real estate, or the right, title and interest of any defendant therein, shall attach the same by leaving an attested copy of such writ with a copy of his doings thereon, with the town clerk of the town in which such real estate shall be situated," etc. By the provisions of Gen. Laws cap. 201, § 23: "Hereafter a contingent, an executory, and a future interest, and a possibility coupled with an interest, in any tenements or hereditaments of any tenure, also a right of entry, whether immediate or future and whether vested or contingent, into or upon any tenements or hereditaments of any tenure, may be disposed of by legal conveyance or will; but no such disposition shall, by force only of this section, defeat or enlarge an estate-tail."

As was said by Tillinghast, J., in *Wood* v. *Watson,* 20 R. I. p. 224: "If a contingent, executory, or future interest in real estate may be disposed of by legal conveyance or will, as provided in Gen. Laws, R. I. cap. 201, § 23 (see also 2 Washb. Real Prop. 5th ed. 614, and cases in note), we see no reason why such an interest may not be legally attached, the general rule being that the attaching creditor acquires the same rights over the thing attached as his debtor had, so far, at any rate, as to enable him to satisfy therefrom the judgment that he shall obtain."

We are of the opinion that the words "the right, title, and interest of any defendant therein" used in Gen. Laws cap. 253, § 10, are broad enough to include equitable as well as legal interests. The effect of such a construction is merely

to extend the common law of the State by making that attachable on original writ, or writ of mesne process, which was already·subject to levy upon execution.

(2)  The respondent claims that the complainant never acquired any lien upon the respondent's interest in the land in question by his original attachment upon the writ, or by his levy upon the execution; that he never acquired any title by his purchase upon execution sale, as set forth in said bill; that when the legal title never has been in the debtor who purchases land and has the title made to a third party in fraud of creditors, the debtor's interest in such land constitutes an equitable and not a legal asset, which can not be sold as the property of the debtor, since there never has been any legal title in him for the judgment lien to take hold of, or the execution to operate on, as in the case where such debtor has had the title and conveyed it fraudulently; that the creditor's only remedy is in equity, and that, as the complainant did not proceed in equity more than four months prior to the bankruptcy proceedings, the equitable title of Joseph Denico passed to his trustee in bankruptcy.

This claim of the respondent is contradictory and invalid.

By U. S. Bankruptcy Law, cap. VII, § 70: "The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copy-rights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him," etc.

The primary object of a bankrupt law is to distribute the property of the bankrupt ratably among his creditors towards

the satisfaction of their debts and to release him from future liability respecting the same. As the design is to distribute the property ratably, it also is to maintain equality and avoid preference among the creditors as far as may be. Therefore the property to be subjected to the operation of a bankruptcy law must necessarily be property available for distribution among the general creditors. In other words, the trustee can take for all the creditors only that which one of them might, but for the bankruptcy act, have taken for himself. If by reason of peculiar circumstances certain creditors acquire, or become entitled to prosecute, special legal or equitable rights, or remedies, respectively, property in which such rights exist or over which such remedies may be exercised does not come within the scope of a bankruptcy law. "Whether the beneficial interest of a bankrupt in property held in trust passes to the trustee or not depends upon whether it is such an interest that the bankrupt might have transferred it, or it might have been levied upon or sold under judicial process against him. If it is so vested it passes. · If it is not, it will not pass to the trustee. Such questions are determinable only by the local law of the state, territory or district where the property has its situs." Loveland Bankruptcy, § 174, and cases cited; 5 Cyc. 348.

The effect of the deed which the respondent Denico took in the name of his wife in order to prevent his creditors from subjecting the property to the payment of their claims against him was to raise a resulting trust therein to him for the benefit of those of his creditors, in danger of being defrauded thereby, who should take the necessary steps to enforce their claims by prosecuting them to final judgment and execution at law, and afterwards by proceeding to establish the trust in equity. As Joshua C. Tucker is the only creditor who answers to this description, he is the only one for whom the trust can be established. Therefore, he is the only one entitled to relief. Hence, if such property passed to Denico's trustee in bankruptcy, he could not distribute that among the general creditors of the bankrupt, but would have to apply the same solely for the benefit of the petitioner in this case.

The position of the respondent Denico may fairly be thus stated: His equitable interest in the land in question either could or could not be conveyed, as the case may be, by him or upon execution against him. If it could be, then it was conveyed to the petitioner. But if it could not be, then it did not pass to his trustee in bankruptcy. Therefore, in either case, his demurrer upon that ground must be overruled.

*A. B. Crafts,* for complainant.

*Page & Page & Cushing,* for respondents.