ST. PAUL HARVESTER COMPANY, APPELLANT, v. EMMA
MAHS,. EXECUTRIX, APPELLEE.

FILED SEPTEMBER 16, 1908. No. 15,627.

1. **Dormant Judgment: REVIVOR.** While a proceeding to revive a
dormant judgment is not the commencement of a new action, it
is the commencement of new and different proceedings under
the provisions of the statutes permitting such revivor. *Eaton v.
Hasty*, 6 Neb. 419, and *Bankers Life Ins. Co. v. Robbins*, 59 Neb.
170, distinguished.

2. ———; ———: DEFENSES: SPECIAL APPEARANCE. While a judg-
ment debtor who has been served with notice of an application
to revive a dormant judgment cannot interpose any objections
which seek to go behind the original judgment, he may appear
and interpose any and all suitable defenses which he may have
to the revivor, such as payment, that such judgment is void
for the reason that the court which entered it had no jurisdiction
over his person, and the like, and may make all proper motions
in reference thereto, without being held to have appeared gen-
erally in the action so as to render valid a judgment which was
void for want of jurisdiction over his person.

3. **Process: RETURN: IMPEACHMENT.** Evidence examined and set out
in the opinion *held* sufficient to meet the requirement that the
return of an officer can only be overcome by evidence that is
clear and convincing.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE. *Affirmed.*

*B. F. Johnson*, for appellant.

*Talbot & Allen, contra.*

FAWCETT, C.

On May 9, 1890, plaintiff obtained a judgment in the
district court for Lancaster county against Louis Faul-
haber, Sr., and his sons, Louis, Henry and John. The
return of the sheriff, by C. A. Hoxie, deputy, certifies that
he served the summons upon Louis Faulhaber, Sr., Louis
Faulhaber and John J. Faulhaber. None of the defend-

ants named appearing, judgment was rendered by default. No execution was ever issued upon the judgment, or any attempt made to enforce payment of it, until October 20, 1904, when plaintiff filed a motion, supported by affidavit, to revive the judgment; the affidavit and notice being in the usual form. Notice of the motion to revive was served upon the defendant Louis Faulhaber, Sr., October 21, 1904. Mr. Faulhaber appeared by counsel, and moved the court for a continuance for 30 days to make a showing against revivor, and on December 6, 1904, filed his separate answer to the motion, in which he alleged that no summons had ever been served upon him or left at his usual place of residence; that he knew nothing about the pendency of any purported action against him until long after said purported judgment was rendered; that the court had no jurisdiction over his person to enter judgment against him; and that the judgment sought to be revived was void. A hearing was had, and judgment of revivor entered, from which Mr. Faulhaber, Sr., appealed to this court. His appeal was successful, and the cause was reversed and remanded. *St. Paul Harvester Co. v. Faulhaber,* 77 Neb. 477. After the case was remanded to the district court, Mr. Faulhaber, Sr., filed a motion to require plaintiff to give security for costs, and later, on April 16, 1907, by leave of court, filed an amended answer containing the same averments as appeared in his original answer, and in addition thereto that the plaintiff is no longer in existence, it having gone into liquidation a long time before the action to revive was instituted; that the court has no jurisdiction for the reason that the affairs of the plaintiff were settled by an assignee, and said plaintiff is not now, and has not been for a number of years, doing business as a corporation; and that plaintiff has no legal capacity to revive said purported judgment. Subsequently, the death of Louis Faulhaber, Sr., was suggested, and defendant, Emma Mahs, executrix "of the estate of Louis Faulhaber, Sr., deceased," was sub-

25

stituted as defendant. No reply was filed, and the case proceeded to trial upon the motion and affidavit for revivor and the amended answer. The court found generally in favor of the defendant executrix, and dismissed the revivor proceedings at plaintiff's costs. A motion for new trial was overruled, and plaintiff prosecutes this appeal.

Plaintiff insists that by moving for a continuance and for security for costs, and by alleging in his amended answer that the court had no jurisdiction to enter the judgment, and by denying the legal capacity of plaintiff to prosecute the action, the defendant, Faulhaber, Sr., entered a general appearance in the action, which would relate back to the time of the entry of the original judgment, and thus render the question as to whether or not there had been a service of the summons immaterial; that "a revivor proceeding is not the commencement of a new action, but the continuation of an action previously commenced," and that "a general appearance may be made after judgment." In support of his contention he cites *Eaton v. Hasty*, 6 Neb. 419; *Bankers Life Ins. Co. v. Robbins*, 59 Neb. 170; *Franse v. Armbuster*, 28 Neb. 467, and *Dryfus v. Moline, Milburn & Stoddard Co.*, 43 Neb. 233. We do not think the cases cited by counsel bear out his contention. While a revivor proceeding is not in one sense the commencement of a new action, it is the commencement of new and different proceedings under the provisions of our statute for the revivor of a dormant judgment. The proceedings to revive a dormant judgment are instituted by the filing of a motion and the service of notice upon the judgment debtor. After service the debtor has the right to appear and "interpose any suitable defense thereto." *Farak v. First Nat. Bank*, 67 Neb. 463. The term "suitable defense" does not mean the trial of the merits of the original suit, but it does include any defense which will show that the judgment was void, subsequent payment, etc. In *Enewold v. Olsen*, 39 Neb. 59, we quote from *Wright v. Sweet*, 10 Neb. 190: "Upon proceedings to revive a judgment which has become dormant,

\* \* \* no objections will be heard which seek to go behind the original judgment"; and then say: "But this case does not decide, nor was it intended to decide, that a person against whom it was sought to revive a judgment might not make the objection that such judgment was void; that is to say, that there was no such judgment." *Haynes v. Aultman, Miller & Co.*, 36 Neb. 257, was an action to revive a dormant judgment. The defendant set up certain defenses which tended to show that the court, when it rendered the judgment, had no jurisdiction of the defendant, and that he had a defense to the action. A demurrer to the answer was sustained, whereupon defendant brought a suit in equity to enjoin the judgment. A demurrer to the petition in the injunction suit was sustained. In affirming that judgment we said: "It appears from the exhibits attached to the petition, and made a part of it, that in the action to revive the judgments the plaintiff herein filed an answer in which he alleged, in substance, that the judgments were void for want of a finding that Haynes had removed from Holt county when the summons was left at his late residence therein, and that he had no notice of said summons or action until it was too late to appear in the action either by appeal or to open the judgment; that the notes in question were given for a combined reaping and mowing machine, which was of no account or value, and the consideration therefor failed. It also appears that a demurrer was filed by Aultman, Miller & Co. to said answer, which demurrer was sustained, and the actions revived for the amounts of the original judgments, interest, and costs. It is probable that the court erred in sustaining the demurrer in those cases, and if the ruling upon the demurrer was before us for review that it would be reversed." In concluding the opinion in the case we said: "The theory of our law is that the debtor shall have personal service, or its equivalent, notice left at his actual residence, otherwise it would be possible to perpetrate gross frauds upon the party sued. None of these matters can be considered in

this case. This is an attack upon the judgment as revived, and if the court had jurisdiction which rendered the same, and there was an opportunity to defend, this action cannot be sustained." The effect of that decision is to hold that, if the defendant in the revivor proceeding had appealed from the judgment of revivor instead of bringing an independent suit for an injunction, his appeal would have been successful, for the reason that he was entitled to make the defense of which the trial court, by sustaining the demurrer, deprived him. In *Wittstruck v. Temple,* 58 Neb. 16, we held: "In a proceeding to revive a dormant judgment the defendant may interpose as a defense that such judgment is void on the ground that the court entering it had no jurisdiction over his person." In the opinion we said: "Had the payment of the judgment been pleaded, then, under the foregoing authorities, the presumption of payment arising from the lapse of time would have defeated the proceeding to revive, unless the judgment creditor had overcome such presumption by proof that the judgment had never been paid. It devolved upon those resisting the order of revivor to tender the issue of payment by proper plea." Without pursuing the matter further, we think it is clear that a defendant upon whom notice has been served for the revivor of a judgment may appear and file any and all defenses which he may have to the revivor of such judgment, and may make all proper motions in reference thereto, without being held to have appeared generally in the action so as to render valid a judgment which was void for want of jurisdiction over his person.

Plaintiff's further contention is that the judgment of the district court is not sustained by the evidence. In his deposition, taken prior to his death, Mr. Faulhaber, Sr., who was a farmer living in the country, testified that no summons was ever served upon him in the case or left at his place of residence; that he never had been sued in his life; that he did not learn of the entry of the judgment until September following its entry; that, when he

learned of it, he consulted Mr. Stearns, and, in company with Mr. Stearns, went to see the deputy who had made the return on the summons; that the deputy then told them that he had not served the summons upon him, and stated that he served it on Ninth street, where the boys had their place of business. Mr. Stearns also testifies that the deputy said the only service he made on anybody was made down on Ninth street, at the place of business. One of the sons, who was conducting the business at Ninth street, was named after his father, "Louis," and it is possible that the officer did not discriminate between the two names of Louis Faulhaber, Sr., and Louis Faulhaber, appearing in his summons. However that may be, plaintiff placed Mr. Hoxie, the deputy, upon the witness stand, but did not attempt to contradict the testimony of Mr. Faulhaber and Mr. Stearns as to his statements on that occasion. Mr. Hoxie testifies that he does not recall any visit by Mr. Stearns or any one else in relation to the summons; that he has no recollection as to the service of the summons beyond what appears in his return; and that he must have served the summons upon Mr. Faulhaber, or he would not have so stated in his return. He further testifies that about that time the sheriff's office was very busy, and they were serving a great many papers, sometimes as many as 50 in one day. His testimony upon the witness stand that he had no recollection as to what had taken place 17 years prior thereto is undoubtedly true, as he could not be expected, with the large number of papers he was serving during those years, to remember such transactions for so long a period of time. But it is also true that in September, immediately following the service of the summons in March, he might, and probably would, have some recollection of what had taken place at that time; and we must assume that he made the statements to Mr. Faulhaber and Mr. Stearns to which they have testified. That he did not serve the summons upon Mr. Faulhaber, Sr., is further corroborated by the affidavit of Fred Faulhaber, which was received in evidence, in

which he says that Mr. Stewart, attorney for plaintiff, told him that there was no judgment against his father; that he, Stewart, had found out that the old man, meaning affiant's father, had no interest in the business, and that the sheriff did not serve him with a summons; and that it was not necessary for Mr. Stearns, to whom Mr. Faulhaber had gone for advice, to go ahead with an injunction suit, as it would only make expense. This statement is not disputed by Mr. Stewart. On the contrary, Mr. Stewart himself testifies that, when Mr. Stearns told him that if he undertook to enforce the judgment against Mr. Faulhaber, Sr., he, Stearns, would have to begin an injunction suit, he told Mr. Stearns, after he had made an investigation and had talked with Hoxie, that he did not think, under the circumstances, that he would put Stearns to the trouble of commencing an injunction suit. When asked if he ever stated to anybody that they had no judgment against Mr. Faulhaber, he says: "I don't remember of ever making a statement of that kind. I possibly told the people what the facts in controversy were." Mr. Stewart also testifies: "Well, I went and saw Mr. Hoxie, deputy sheriff, and talked with him about it. Q. What did he say? A. Mr. Hoxie said he didn't know whether he served it or not, I think was about the substance of what he said, he wasn't sure. He kind of thought he hadn't served it; that that was a mistake." That after he had had the talk with Mr. Hoxie he told Mr. Stearns: "Of course, if Mr. Hoxie would not stand by his return, there would not be any use of his trying to enforce the judgment. Q. And did you ever try to collect the judgment from the old man? A. No; never did that I have any recollection of. Q. Well, if you had thought you had a judgment, you would have made an effort to collect it? A. Yes; if I had thought we had a judgment or could enforce it, we would certainly have enforced it; but, of course, we had to depend on Hoxie's return and the testimony in regard to it, and we thought there was no use trying to enforce it since he took the position that he did.

Q. Did you form any belief in your talk with Mr. Hoxie as to whether or not he had served it? A. No; I don't know as I did form any belief on the subject. I was a little suspicious of Hoxie at that time on account of some other matters, and, as I say, I never knew whether he served it or not. I just simply know he would not stand by his return at that time." Mr. H. F. Rose was called as a witness, and testified that at the time the judgment was obtained in 1890 he was associated with Mr. Stewart. On cross-examination we have the following: "Q. And you never made any effort after that or any attempt to collect the judgment? A. I don't think we ever sued out execution. Q. You knew that Faulhaber was good, and owned a farm out east of town, didn't you? A. That was our understanding before we commenced the suit. We really expected to collect off of him. Q. Did you talk with Hoxie yourself? A. Yes; I think I talked with Hoxie on that same trip, and then Mr. Stewart and I conferred about it, and held a little indignation meeting, but we never concluded to press the thing to an actual test at that time. Q. And never after that either? A. No; we separated soon after that, and those old matters, my recollection is, were retained by Mr. Stewart. I retained no interest in those."

The point is made by counsel for plaintiff that the testimony by which it is sought to impeach the return of an officer must be clear and convincing. In this we concur; but in our opinion the evidence produced upon the hearing of this case meets that requirement. We think it is clearly and convincingly established by the record before us that no summons was ever served upon Louis Faulhaber, Sr. It follows that the judgment of the district court is right, and should be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.