JOHN F. WOODS *v.* ROLAND ALPHEE SPOTURNO, also known as Roland Alphee Coty, Administrator of Francois Coty, Deceased, and CHRISTIANE YVONNE CATHERINE SPOTURNO SERWIN, Administratrix of Francois Coty, Deceased.

(*February* 17, 1936.)

HARRINGTON and RICHARDS, J. J., sitting.

*Aaron Finger* (of Richards, Layton & Finger) for plaintiff.

*John Biggs, Jr.,* and *Stewart Lynch* (of Biggs, Biggs and Lynch) for defendants.

Hugh M. Morris and G. Burton Pearson, Jr., by leave of the court, as *amici curiae,* also filed a brief in support of certain of the contentions made by the defendants.

Superior Court for New Castle County, *scire facias,* No. 25, January Term, 1935,

300

HARRINGTON, J., delivering the opinion of the Court:

The plaintiff, John F. Woods, procured a judgment by default in this court in a foreign attachment proceeding against Francois Coty, the French perfumery manufacturer, and a resident of France, for $1,144,089.27. Francois Coty subsequently died and the plaintiff issued a *scire facias* on that judgment in order to make the personal representatives of Mr. Coty parties to it; and the case is before us on a motion of the defendants to dismiss that writ and to quash the services of it. Other contentions are made, but this motion is mainly based on the contention that the judgment is void on its face, because it not only appears from the record of it that the rights and interests of Mr. Coty, in the corporate stock attached, are purely equitable in their nature, but it also appears that such alleged interests do not

appear on the books of the corporation, and, therefore, are not subject to attachment.

The return of the sheriff showing what he did pursuant to the directions of the attachment writ is a part of the judgment record. The "First" paragraph of that return shows that he attached the interest of Francois Coty in 606,661 shares of the capital stock of Coty, Inc., a Delaware Corporation, a portion of which stock was in the name of Lee & Co., and the remainder in the name of Hurley & Co. It also appears from that paragraph of the return that both of these concerns were merely acting as nominees of Mr. Coty in holding the stock registered in their names.

From the broad language of the "Second" paragraph of the sheriff's return on the writ it might seem that other and additional stock, stock options, or right or interest in stock of Coty, Inc., had been attached. At the argument of the case the plaintiff's attorney admitted, however, that the only property rights of Mr. Coty seized under the writ were those described in the "First" paragraph of that return.

This admission is consistent with the statements made by the plaintiff in the attachment affidavit, which also composes a part of the judgment record.

A judgment in a foreign attachment proceeding is a judgment in the nature of a judgment in *rem* and not in *personam;* and the validity of this judgment, therefore, depends on whether such equitable rights or interests in corporate stock, as were seized, were subject to attachment under *Section* 2009 of the *Revised Code of* 1915 (*Corporation Law,* § 95), as amended by *Chapter* 105, § 1, *Volume* 33, *Laws of Delaware. McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800.

■ ■ As a general rule the issue raised by a *scire facias* on a judgment is a very narrow one, and no questions that were or might have been raised prior to the entry of the judgment will be considered under it. *Robbins v. Bacon,* 1 *Root (Conn.)* 548; *Green v. DeWit,* 1 *Root (Conn.)* 183; *Dowling, Adm'r, v. McGregor,* 91 *Pa.* 410; *Bank of Eau Claire v. Reed,* 232 *Ill.* 238, 83 *N. E.* 820, 122 *Am. St. Rep.* 66; *St. Paul Harvester Co. v. Mahs,* 82 *Neb.* 336, 117 *N. W.* 702; *Malsberger v. Parsons,* 1 *Boyce* 254, 75 *A.* 698; 34 *C. J.* 662; 56 *C. J.* 869. This is necessarily so because that writ partakes of the nature of a declaration (*Woodward v. Daniels,* 3 *W. W. Harr.* [33 *Del.*] 36, 130 *A.* 30), and also because of the limited scope of its allegations; but that rule does not apply if the invalidity of such judgment clearly appears from the record of it. *St. Paul Harvester Co. v. Mahs,* 82 *Neb.* 336, 117 *N. W.* 702; *Robbins v. Bacon,* 1 *Root (Conn.)* 548; *Dowling, Adm'r, v. McGregor,* 91 *Pa.* 410; *Bank of Eau Claire v. Reed,* 232 *Ill.* 238, 83 *N. E.* 820, 122 *Am. St. Rep.* 66; *Lashmett v. Prall,* 83 *Neb.* 732, 120 *N. W.* 206; *Amer. Freehold Land Mortg. Co. v. Smith,* 84 *Neb.* 237, 120 *N. W.* 1113; *Malsberger v. Parsons,* 1 *Boyce* 254, 75 *A.* 698; 34 *C. J.* 663.

■ In *Malsberger v. Parsons,* 1 *Boyce* 254, 75 *A.* 698, 702, *supra,* the court said: "If the *scire facias* is in character a judicial writ, issuing upon the record, then only these defences may be pleaded that go to the denial, release, and discharge of the record;" and because of alleged jurisdictional defects, apparent on its face, the validity of the plaintiff's judgment is one of the questions in this case. When such defects are so apparent, a judgment may be attacked collaterally, and this would seem to be so no matter for what purpose the writ of *scire facias* is issued. See *Frankel v. Satterfield,* 9 *Houst.* 201, 19 *A.* 898; see, also, *Sharon v. Terry* (*C. C.*), 36 *F.* 337, 346, 1 *L. R. A.* 572.

*Woods v. Coty et al.,* 21 *Del. Ch.* —, 180 *A.* 587, 589, is not inconsistent with this conclusion. In that case the court in commenting on *Frankel v. Satterfield,* 9 *Houst.* 201, 19 *A.* 898, *supra,* said:

"Where the *scire facias* seeks execution of a judgment, it is obvious that it is a pertinent and immediate subject of inquiry whether the judgment has a legal existence."

As we shall hereafter see that is the real purpose of the writ in this case. In most cases questions of this character are raised by the plea of *nul tiel* record, but if the plaintiff's judgment is void on its face, as is contended by the defendants, no new parties should be made to it, or other proceedings taken on it. There would, therefore, seem to be no good reason why the questions raised by the defendants cannot be considered under their motion to dismiss the *scire facias* issued on that judgment and to quash the service of that writ.

Shares of stock in a corporation are intangible property in the nature of choses in action and are not capable of a manual seizure and delivery. By reason of that fact at common law they could not be levied on and sold on execution process. *Fowler v. Dickson,* 1 *Boyce* 113, 74 *A.* 601; 11 *Fletcher on Cor.* (*Per. Ed.*) 103.

That general rule has been changed, in this State, by statute and corporate stock is now subject to seizure and sale in attachment proceedings, but the question is, whether that statute applies to the facts of this case.

For the reason already stated, at common law, an equitable interest in personal property could usually be reached by a creditor's bill in equity, but it could not be seized on execution process issued by a Court of Law. *Lessee of Smith v. McCann,* 24 *How.* 398, 16 *L. Ed.* 714; *Disborough v. Outcalt,* 1 *N. J. Eq.* (*Saxton*) 298; *Scott v.*

*Scholey,* 8 *East.* 467; 6 *Pom. Eq. Jur.* (*3d Ed.*), § 871; 23 *C. J.* 340; 15 *C. J.* 1376.

The same general rule also applied to an equitable interest in land. *Lessee of Smith v. McCann,* 24 *How.* 398, 16 *L. Ed.* 714; *Disborough v. Outcalt,* 1 *N. J. Eq.* (*Saxton*) 298; *Sawyer v. Morte,* 21 *Fed. Cas. page* 567, *No.* 12,401; *Flanagin v. Daws,* 2 *Houst.* 476; 6 *Pom. Eq. Jur.,* § 871. In considering this question, the author, in 6 *Pomeroy's Equity Jurisprudence* (*3d Ed.*), at § 871, aptly said:

"The jurisdiction of equity to entertain suits in aid of creditors, undoubtedly, had its origin in the narrowness of the common law remedies by writ of execution. These writs issued by courts of common law, besides being otherwise limited in their operation, were, of course, confined to those estates and interests recognized by the law, and did not extend to estates and interests equitable in their nature. Creditors' suits were, therefore, permitted to be brought in those instances where the relief by execution at common law was ineffectual; as for a discovery of assets; to reach equitable and other interests not subject to levy or sale at law; and to set aside fraudulent conveyances and obstructions." See, also, 4 *Pom. Eq. Jur.* (*3d Ed.*), § 1415.

At the end of both of these sections Mr. Pomeroy added, however, that,

"Statutes in England and in certain American states have greatly extended the scope of writs of execution, thereby providing for adequate legal relief in cases where formerly resort to equity was necessary, and even extending the relief to interests where perhaps a creditor's bill would not lie."

Among other statutes he cited the *English Statute of 29 Charles 2nd, Chapter 3, Section 10,* and 1 and 2 *Victoria,* as examples of such statutory provisions. I have not had access to, and, therefore, have not been able to examine the provisions of the *Statute of Victoria,* but the *Statute of 29 Charles 2nd,* expressly made certain equitable interests in land subject to execution process. The language of that statute is quoted in *Tucker v. Denico,* 27 *R. I.* 239, 61 *A.* 642; see, also, 6 *Pom. Eq. Jur.* (*3d Ed.*), § 871, note. The earlier

statute of *Westminster 2nd* (13 *Ed. I.*), which provided for the writ of elegit, did not refer to equitable interests in land, either expressly or by necessary implication, so such interests were not extended under it. *Disborough v. Outcalt,* 1 *N. J. Eq.* (*Saxton*) 298. The same general rule was applied in construing 5 *George 2nd, Chapter* 7, enacted in the year 1732, and which in substance, provided that lands, tenements and hereditaments in the English Colonies and plantations should be chargeable with 'debts and subject to like process of execution as personal property. *Sawyer v. Morte,* 21 *Fed. Cas. page* 567, *No.* 12,401. It was likewise applied in New Jersey to a statute authorizing, in general terms, the sale on execution process of any interest in land. *Williams v. Baker,* 62 *N. J. Eq.* 563, 51 *A.* 201; see, also, *Disborough v. Outcalt,* 1 *N. J. Eq.* (*Saxton*) 298, which involved the construction of a somewhat similar statute.

All of these statutory provisions were in derogation of the common law rules and the underlying principle involved in construing them was clearly stated in *Van Norman v. Jackson,* 45 *Mich.* 204, 210, 7 *N. W.* 796, 798. The question before the court in that case involved the construction of certain legislative enactments which subjected the "share or interest of a stockholder in any bank, insurance company or any other joint-stock company," incorporated by any law of the State of Michigan to attachment process. In holding that that statute must be construed strictly and, therefore, did not cover an equitable interest in such stock the court said:

"The remedy by attachment is highly artificial and in this state is considered as 'special and extraordinary.' The statutory provisions relating to it have invariably been subjected to strict construction and the rule is fairly established that unless the case is plainly within the terms expressed it cannot be considered as embraced. * * * The same doctrine applies with great force to the subjection of shares of stock in incorporated companies to mesne process. They are not leviable at common law and positive provisions are requisite

"to enable a court of common law to apply its power to them. They are intangible entities and incapable of caption by the gross methods of that system. In order that they may be safely proceeded against without going into a court of equity it is indispensable that the legislature provide specifically therefor."

See, also, *Fowler v. Dickson,* 1 *Boyce* 113, 74 *A.* 601; *Smith v. Armour,* 1 *Penn.* 361, 40 *A.* 720; *Lewis' South. Stat. Constr.* (*2d Ed.*), §§ 565, 568, 571, 573, 694; 6 *C. J.* 36.

When necessary to resort to rules of construction to ascertain the scope of an attachment statute, these rules would seem to apply with peculiar force where, as in this state, Courts of Law and Courts of Equity are separate and distinct tribunals having, for the most part, separate and distinct jurisdictions.

It is true that though the statute involved merely referred, in general terms, to land and did not specifically mention equitable interests in such land, the rule has long been established in this state that such an interest is subject to a judgment lien, and to execution process issued thereon, if the legal title thereto is not held on an active trust. *Flanagin v. Daws,* 2 *Houst.* 476; see, also, *Doe ex dem. McMullen v. Lank,* 4 *Houst.* 648. That conclusion was, however, largely based on historical reasons which had necessitated a liberal construction of certain somewhat similar early statutory provisions couched in general language, which had been enacted by our Colonial Assembly, and all of which with some limitations, which we need not consider, had made lands, or all lands, whatsoever subject to the payment of debts. In fact the language used in some of these early provisions was strikingly similar to that used in the *Statute of 5 George 2nd, Chapter 7*; but in view of the particular statutory provisions to be construed, it is not necessary for us to consider whether the reasoning of

*Flanagin v. Daws, supra,* is applicable to equitable interests of the same nature in most classes of personal property.

There are cases, however, where courts in considering attachment statutes using mere general language with no explanatory context have applied much more liberal rules of construction. *Middletown Sav. Bank v. Jarvis,* 33 *Conn.* 372; *Nat'l Bank v. L. S. & M. S. R. Co.,* 21 *Ohio St.* 221; *Fousek v. DeForest,* 90 *Mont.* 448, 4 *P.(2d)* 472; *Pelzer Mfg. Co. v. Pitts & Hartzog,* 76 *S. C.* 349, 57 *S. E.* 29, 11 *Ann. Cas.* 665; *Tucker v. Denico,* 27 *R. I.* 239, 61 *A.* 642; see, also, *Lippitt v. Amer. Wood Paper Co.,* 15 *R. I.* 141, 23 *A.* 111, 2 *Am. St. Rep.* 886. In most of these cases though the statutes merely authorized the attachment of "stocks and interests in stocks," or "the right or shares which any person may own in the stock of any bank or other corporation," or some such similar language, they were construed to include equitable interests in such stock. It may perhaps be contended that when the word "stock" is used that it is difficult to conceive of any legal rights or interests in such stock that would not be covered by that word alone (see *Lewis' South. on Stat. Constr.,* § 436) ; but it is not easy to explain these cases on any other theory than that the courts treated the attachment statutes before them as remedial in their nature, and, therefore, applied liberal rules of construction. That seems to be conceded by the plaintiff's attorney, and was certainly true in *Pelzer Mfg. Co. v. Pitts & Hartzog,* 76 *S. C.* 349, 57 *S. E.* 29, 11 *Ann. Cas.* 665. However that may be it is not necessary for us to rely on any of these cases.

Prior to 1923, *Section* 95 of the *Corporation Law* (*Rev. Code* 1915, § 2009), provided that

"The shares of any person in any incorporated company, with all the rights thereto belonging," might "be attached for debt, or other demands; and ＊ ＊ ＊ sold at public vendue."

Under the 1923 amendment to that *Section* (*Chapter 105, § 1, Volume 33, Laws of Delaware*), its scope was materially broadened, and "the shares of any person in any incorporated company, with all the rights thereto belonging"were not only made subject to attachment, "for debt, or other demands," but "any person's option to acquire such shares, or his right or interest in such," without any other limiting language being used, could also be seized in such a proceeding.

■ In its final analysis the precise meaning of a statute must be ascertained from the language used, and though portions of it be couched in mere general language, not in so many words referring to equitable interests, the meaning of such language may be so explained by the context of the statute, when read as a whole, as to apply to equitable interests as well as to legal interests when that intent is clearly apparent from the words used; and *Van Norman v. Jackson, supra,* did not intend to lay down any rules inconsistent with this principle.

■ In this connection, it is a well settled rule that where particular words are followed by general words, capable of a broad meaning, the meaning of such general words is usually explained thereby. *Lewis' Southerland on Statutory Construction, §§ 422, 437.*

In discussing this principle, the author of that work said:

"The rule is that where words of a particular description in a statute are followed by general words, that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases of like kind to those designated by the particular words."

*Lewis' South. on Stat. Constr., § 422, supra.* See, also,

*Gibson v. Main*, 14 *Del. Ch.* 112, 122 *A.* 188;. *Gibson v. Main,* 14 *Del. Ch.* 449, 129 *A.* 259, minority opinion.

 It is true that our statute relates to execution process issued by a Court of Law, and unlike the *Statute of 29 Chas. II* in England does not in so many words refer to equitable interests, but when the context of the statute is considered the language used would seem to be sufficiently broad and comprehensive to cover such interests. Even if it could be said that the words "right or interest" inserted by the 1923 amendment are no less general in their possible scope than the words used in the statutes already referred to and standing alone would not include equitable interests in corporate stock, that is not the question before us.

It is a significant fact that the words "any person's option to acquire * * * shares" of stock are also coupled with these words, and by the provisions of the statute are likewise made subject to attachment process.

Options to acquire stock are at the most in the nature of contract rights and the title of the holder of such an option in the stock covered by it can be nothing more than equitable in its nature. *Flanagin v. Daws*, 2 *Houst.* 477; see, also, *Kingston v. Home Life Ins. Co.*, 11 *Del. Ch.* 258, 101 *A.* 898.

The insertion of this provision, clearly making equitable interests of this nature subject to attachment process, would seem to indicate that the general words "right or interest," when applied to corporate stock, were intended to have a broad meaning and were not confined to mere legal interests in such stock.

*Van Norman v. Jackson*, 45 *Mich.* 204, 210, 7 *N. W.*

796, *supra,* which is relied on by the defendants is not inconsistent with this conclusion.

As we have already pointed out, the statute in that case materially differed from our statute in that there was nothing, whatever, in the context to explain the meaning of the general words used.

Construing these words strictly, it was, therefore, held that they did not apply to equitable interests.

The defendants further contend, however, that even though some equitable rights or interests in corporate stock are subject to attachment, that when *Sections* 95 and 96, as amended, and the 1929 amendment to *Section* 14 of the same *Act* (*Rev. Code* 1915, § 1928, as amended by 36 *Del. Laws, c.* 135, § 6) are read together, it is apparent that only such interests, as are created by the corporation, or, at any rate, only those interests that appear on the corporate records are subject to attachment.

Broad and comprehensive language used in one section of the statute can, of course, be limited by the language of a subsequent section of the same *Act,* if, when read as a whole, the legislative intent in that respect is clearly apparent.

As we have seen, *Section* 95 of the *Corporation Law,* as amended, clearly makes shares of stock in a corporation, as well as options to acquire stock, and any right or interest in such stock, subject to attachment process for debt or other demands.

In harmony with that provision, *Section* 96, as amended first provides how and upon whom process shall be served "when shares of stock, or any option to acquire such, or any right or interest in such, shall be so attached."

Without the use of any conditional words, whatever, *Section* 96 then provides that the corporate officer, or agent, upon whom process is served, shall give to the attaching officer "a certificate of the number of shares held or owned by the debtor in such company, with the number or other marks distinguishing the same."

This language falls far short of making either the production of this certificate or what facts the corporate records may disclose, a condition on which the validity of the attachment clearly provided for by *Section* 95 must depend. If, however, there is, or even has been any doubt about the meaning of that part of *Section* 96, as originally drawn, though it then merely referred to corporate stock, and not to rights or interests in such stock, its present purpose would seem to be clearly shown by the next phrase of the same sentence inserted by the 1923 amendment to that section. That phrase, which begins with the significant words "or in case," provides: "or in case such debtor appears on the books of the company to have an option to acquire shares of stock or any right or interest in any shares of stock of such company there shall be given such officer [the attaching officer] a certificate setting forth any such option, right or interest in the shares of such company in the language and form in which such option ＊ ＊ ＊ appears on the books of such company."

It would, therefore, seem that the attachment was complete when the prescribed process was served on the proper officer or agent of the corporation. From the standpoint of the corporation it may be desirable that any stock, stock options, or rights, or interests in stock, made subject to attachment and sale should appear on its books, but as we have already indicated, no such restrictive intent is indicated when the broad language of *Section* 95, of the *Corporation Law*, as amended, is read in connection with

*Section* 96, as amended. On the contrary, the apparent purpose of the statute is to aid creditors, whether the stock, options to acquire stock, or rights, or interests in the stock attached appear on the corporate records, or not.

In fact, in view of the language used in *Section* 96, as amended, it is apparent that the purpose of that part of it in controversy was merely to identify shares of corporate stock, stock options, or rights, or interests in such stock, when attached and sold, and when and only when the corporate records make that possible.

The provisions of *Section* 97, of the act under consideration is quoted in the preliminary statement of facts, and there is nothing in it that is in any way inconsistent with this conclusion. Nor is there anything inconsistent with either of the above conclusions in *Section* 14 of the *Act,* as amended by *Chapter* 135, § 6, of *Volume* 36, *Laws of Delaware.* That *section,* as amended, provides for the creation and sale by a corporation, in connection with the sale of stock or other securities issued by it, of rights or options entitling the holder to purchase from the corporation shares of its capital stock; but that amendment was not made until 1929. If that amendment is of any value, whatever, in ascertaining the meaning of the prior amendments to *Sections* 95 and 96, it would seem to indicate that those amendments were not confined to the creation and sale of stock options, or rights or interests in stock, by the corporation itself.

There are statutory exceptions but as a general rule, so far as legal interests, at least, are concerned, most property rights, whether real or personal, are by statute in this state subject to execution or attachment process[1];

---

[1] *State v. Bradford,* 7 *W. W. Harr.* (37 *Del.*) 289, 183 *A.* 316; *Flanagin v. Daws,* 2 *Houst.* 476.

and this is true, though the precise right or interest of the defendant is unknown to both the plaintiff and the attaching officer at the time of the seizure and sale.

The seizure and sale on execution or attachment process of the interest of a partner in the assets of a firm is an example of the application of this rule; and all that can be seized and sold in such a case is the share of the defendant in the surplus assets after the partnership debts are paid. *Bevan v. Allee*, 3 *Harr.* 80; *Davis v. White*, 1 *Houst.* 228; *Woolley's Del. Pr.*, § 1025; *Waples on Attachment & Garnishment*, § 250.

When stock, options to acquire stock, or rights or interests in stock are attached, and the corporate records show what the rights or interests of the defendant are in such property, there is, however, no good reason why the statute should not require that the facts be disclosed to the attaching officer; and there is nothing in *Fowler v. Dickson*, 1 *Boyce* 113, 74 *A.* 601, that is inconsistent with the conclusion that this was the sole purpose of the certificate provided for in *Section 96*, as amended.

The courts of this state have repeatedly stated that though charter or by-law provisions are not complied with, the assignment and delivery of a stock certificate ordinarily transfers the legal title to the stock represented thereby. This is because in most cases such provisions requiring transfer on the books of the corporation are solely for the benefit of the corporation. *Allen v. Stewart*, 7 *Del. Ch.* 287, 44 *A.* 786; *Lippman v. Kehoe Sten. Co.*, 11 *Del. Ch.* 190, 98 *A.* 943; *Smith v. Universal Service, etc., Co.*, 17 *Del. Ch.* 58, 147 *A.* 247; *Haskell v. Mid. States Petrol. Corp.*, 5 *W. W. Harr.* (35 *Del.*) 380, 165 *A.* 562; *Drug, Inc. v. Hunt, Receiver*, 5 *W. W. Harr.* (35 *Del.*) 339, 168 *A.* 87.

Our conclusion as to the meaning of *Sections* 95 and 96 of the *Corporation Law,* as amended, would seem to be consistent with this well recognized rule.

It is, also, in harmony with the dictum of the court in *Gibson v. Gillespie,* 3 *W. W. Harr.* (33 *Del.*) 381, 138 *A.* 600, 601. In that case the court said:

"The court are clearly of the opinion that all the stock of the defendant in said company was attached when a copy of the process was left with the company as provided by law. To hold otherwise would make it possible for a corporation, or its resident agent, to delay if not defeat an attachment in any case. Certainly, the statute does not contemplate such a situation. * * *

"Service of process, as required by the statute, is notice to the corporation that the stock has been attached. *Fowler v. Dickson,* 1 *Boyce* 113, 121, 74 *A.* 601.

"The certificate, which the statute provides shall be delivered to the officer, is made a part of his return, and serves the useful purpose of identifying the shares that may be sold under the process; but its absence would not invalidate the attachment."

See, also, *Mann v. Peer,* 4 *Penn.* 279, 55 *A.* 335; *State ex rel. Cooke v. New York-Mexican Oil Co.,* 2 *W. W. Harr.* (32 *Del.*) 244, 122 *A.* 55, 59; *Morgan's Executors v. Ownby,* 6 *Boyce* 379, 405, 100 *A.* 411.

In *State ex rel. Cooke v. New York-Mexican Oil Co., supra,* the court, in part, said:

"No service of process is had upon the company in the sense of making it a party to the [attachment] suit and the company may have no notice whatever as to the person holding the stock of the company."

There are cases where Courts, in construing statutes, have said that they subjected to attachment process only such stock, or interest in stock, as appeared on the corporate records. *Lippitt v. Amer. Wood Paper Co.,* 15 *R. I.* 141, 23 *A.* 111, 2 *Am. St. Rep.* 886; see, also, *Van Norman v. Jackson,* 45 *Mich.* 204, 210, 7 *N. W.* 796; *Feige v. Burt,* 118 *Mich.* 243, 77 *N. W.* 928, 929, 74 *Am. St. Rep.* 390.

It is true that general language that might at a glance seem to support the defendants' contention in this respect was used in *Lippitt v. Amer. Wood, etc., Co.,* 15 *R. I.* 141, 23 *A.* 111, 2 *Am. St. Rep.* 886; but in that case, as in the other cases cited, the real question was whether an equitable right or interest in stock was made subject to attachment process by the statute and the remarks relied on were made in discussing that general question.

In the Michigan statute involved in *Van Norman v. Jackson,* and in *Feige v. Burt,* in so far as this particular question was material, it would seem that the remarks of the court relied on by the defendants could only be justified on the theory that the language of the statute made the giving of the certificate by the corporate officer or the agent served, and the facts shown thereby, an essential part of the process.

However that may be, the correctness of any such conclusion must necessarily depend on the particular language used in the statute, and, as we view it, the language of our statute will not justify any such construction.

██ ██ Though at common law, an equitable interest could not be seized on execution process issued by a court of law, that rule can be changed by statute without violating any of the provisions of the *Constitution of* 1897.

*Section* 7 of *Article* 4 of that *Constitution* provides:

"The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the Superior Court."

That language is necessarily prospective in its character and is not confined to the precise "jurisdiction and powers vested by the laws of this state in the Superior

Court," when the *Constitution* was promulgated. See *Fox v. Wharton, 5 Del. Ch.* 200; *Flanagin v. Daws, 2 Houst.* 476.

*Section* 10 of *Article* 4 of that *Constitution* is not inconsistent with this conclusion. That *section* provides that

"The Chancellor shall hold the Court of Chancery. This court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."

*Section* 3844 of the *Revised Code of* 1915, relating to the jurisdiction and powers of the Court of Chancery, contains an express proviso:

"That the Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by common law, or Statute, before any other Court, or jurisdiction, of this State."

This provision seems to be merely declaratory of the common law rule (*Kahn v. Orenstein, 12 Del. Ch.* 344, 114 *A.* 165; *Fox v. Wharton, 5 Del. Ch.* 200; *Hitchens v. Millman, 18 Del. Ch.* 404, 162 *A.* 39); and somewhat similar statutory provisions have existed in this state since a very early date. *Fox v. Wharton, 5 Del. Ch.* 200.

In determining that the Superior Court can be given the right to attach equitable interests in corporate stock, it is not necessary for us to consider the effect of such a statute on the jurisdiction of the Court of Chancery in particular cases. See, however, *Hitchens v. Millman, 18 Del. Ch.* 404, 162 *A.* 39; *Fox v. Wharton, 5 Del. Ch.* 200; *Hollis v. Kinney, 13 Del. Ch.* 366, 120 *A.* 356. Nor is it necessary for us to consider the policy of such a statute.

The plaintiff's attachment against Mr. Coty was not dissolved by his death, as judgment by default had then been entered against him, and the amount due on that judgment had even been ascertained by an inquisition at bar (*Fitch v. Ross, 4 Serg. & R.* [*Pa.*] 557; *Bieber v. Weiser, 1 Woodw. Dec.* [*Pa.*] 473); and the contention of

the defendant in that respect is not supported by *Reynolds v. Howell,* 1 *Marv.* 52, 31 *A.* 875. In fact, there are some statements in that case that support this conclusion.

In *Reynolds v. Howell, supra,* garnishee process was issued on a judgment and served on one Howell. After its service, but before answer made or plea filed by him, the defendant in the original judgment died. The garnishee subsequently filed a plea of *nulla bona.* The case was heard on an agreed statement of facts, and the question was whether any valid steps, such as answer or plea, could be taken by the garnishee, pursuant to the direction of the *fi. fa.* attachment served on him, after the death of the defendant in the judgment, on which that process had issued.

Our foreign attachment statute is based on the custom of London, and originally, at least, such a proceeding was primarily for the purpose of compelling the appearance of the defendant; and, even now, though he fails to appear and defend the action, no judgment can be entered against him until the end of the second term of court, after the attachment process has issued. *Rev. Code* 1915, § 4137; *McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800; *Reynolds v. Howell,* 1 *Marv.* 52, 31 *A.* 875.

At any time before the execution of the order of sale, the court, for good causes shown, on petition filed, notice given, and on such terms as it may deem proper may, however, open such a judgment and permit the defendant to appear and defend the action. *Chapter* 266, *Volume* 37, *Laws of Delaware; McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800, *supra.*

By the express provisions of the statute, the attachment lien is not discharged, however, by the opening of the judgment, but stands as security *pro tanto* for any personal

judgment that may finally be entered against the defendant. *Chapter* 266, *Volume* 37, *Laws of Del.; McLaughlin v. Bahre, supra.*

*Section* 26 of *Article* 4 of the *Constitution* of 1897, after providing what shall be done when the plaintiff in an action dies, then provides:

"And if a * * * defendant dies, the executor or adminstrator being duly served with a *scire facias* * * * shall be considered as a party to the suit; * * * and in any of those cases, the court shall * * * render judgment for or against executors or administrators, as to right appertains."

Judgment in the attachment proceedings was entered against Mr. Coty in his life time, and no order to open that judgment and to permit him, or his personal representatives, to appear and defend was subsequently made by the court. There is, therefore, no pending suit to which the procedure provided for in *Section* 26 of *Article* 4 of the *Constitution* of 1897 can apply.

 A writ of *scire facias* is in the nature of a rule to show cause (*Woodward v. Daniels*, 3 *W. W. Harr.* (33 *Del.*) 36, 130 *A.* 30; *First Nat. Bank v. Crook*, 6 *W. W. Harr.* (36 *Del.*) 281, 174 *A.* 369) ; and, with certain exceptions growing out of fictions relating to the teste date of the writ, which we need not consider, no execution can be issued on a judgment after the death of the defendant without making his personal representatives parties to the judgment by that writ. *Cooper v. May*, 1 *Harr.* 18; *Graham's Ex'x v. Wilson*, 5 *Harr.* 435; *Farmers' Bank v. Reynolds*, 1 *Harr.* 513; *Woolley's Del. Prac.*, § 963.[1]

This is in accordance with the provisions of *Section*

---

[1] By statute certain debts are preferred when the personal property of a deceased person is sold on execution process. *Rev. Code* 1915, §§ 4339, 4340.

4407 of the *Revised Code of* 1915 by which the plaintiff's rights are regulated. That *section* provides:

"A writ of *scire facias* may be sued upon a judgment in a personal, or mixed action, as well as upon a judgment in a real action, * * * to obtain execution of such judgment. * * * Such writ may be sued by and against the parties to the judgment, * * * and also by and against any other persons entitled, or liable, to the execution thereof, whether as executors, administrators, heirs, terra tenants, or otherwise."

The personal representatives of Mr. Coty are the custodians of his personal property, or of his rights therein, and, therefore, are the persons primarily affected by the sale of such property on attachment process; and this is, nevertheless, true, though that property was subjected to the attachment lien during the life time of Mr. Coty.

It apparently is not contended that the allegations of the writ of *scire facias* issued by the plaintiff are not broad enough to comply with the statute above referred to. If, however, any such contention were made, as that writ partakes of the nature of a declaration, it would seem that that question should be raised by demurrer, and not on a motion to quash that writ. See *Woodward v. Daniels,* 3 *W. W. Harr.* (33 *Del.*) 36, 130 *A.* 30.

For the reasons above given, the defendant's motion, on which this case was argued, is refused.

NOTE. Reversed on other grounds by the Supreme Court on writ of error; see 8 *W. W. Harr.* (38 *Del.*) —.